UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA, for the use and benefit of THYSSENKRUPP ELEVATOR CORPORATION,

    Plaintiff,

v.

THE GUARANTEE COMPANY OF NORTH AMERICA USA, and SKYTEK LLC,

    Defendants,

SKYTEK LLC,

    Third-Party Plaintiff,

v.

FEDERAL INSURANCE COMPANY,

    Third-Party Defendant.

Case No. C20-1169-MLP

ORDER

## I. INTRODUCTION

This matter is before the Court on Plaintiff ThyssenKrupp Elevator Corporation's ("TKE") and Third-Party Defendant Federal Insurance Company's ("Federal") Motion for Summary Judgment ("TKE's Motion"). (Mot. (Dkt. # 27).) TKE and Federal seek to have the

ORDER - 1

Court: (1) grant summary judgment in favor of TKE on its Miller Act claim for unpaid invoices against Defendant and Third-Party Plaintiff Skytek, LLC ("Skytek") on a payment bond backed by the Guarantee Company of North America USA ("Guarantee"); (2) dismiss Skytek's counterclaim for breach of contract against TKE; and (3) to dismiss Skytek's third-party claim against Federal seeking indemnification on Federal's payment bond backing TKE's subcontract work. (*Id.* at 2.) Skytek opposed the motion (Resp. (dkt. # 31)) and TKE filed a reply (Reply (dkt. # 33)). The Court heard oral argument from the parties on May 3, 2021. (Dkt. # 37.)

Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, TKE's Motion (dkt. # 27) is GRANTED, as explained further below.

## II. BACKGROUND

On March 22, 2017, the Department of Veterans Affairs ("VA") awarded a contract to Skytek for a project known as "Elevator Renovation Building 1 Seattle VAMC Elevators located at 1600 S. Columbian Way in Seattle, Washington" ("Project"). (Paladino Decl. (Dkt. # 28) at ¶ 2.) Under the Project, Skytek was the prime contractor and TKE was its subcontractor. (*Id.* at ¶ 3.) TKE was to provide labor and materials for the Project in the form of installing and modifying elevators and escalators. (Paladino Decl., Ex. A (Dkt. # 28-1) at 2.) The VA allowed 500 days for the Project to be completed, with a target completion date of August 24, 2018. (Skytek Opposition, Ex. 1 (Dkt. # 31-1) at 4.) Guarantee issued a bond for the Project ("Project Bond"). (TKE Compl. (Dkt. # 1) at ¶ 6.) The Project Bond notes Skytek as the principal and Guarantee as surety. (*Id.*)

On April 19, 2017, Skytek began preparing a proposed subcontract ("Subcontract") for the Project between itself and TKE. (Paladino Decl., Ex. A.) Article 14 of the Subcontract provided a "time is of the essence" clause. (*Id.* at 6.) That clause provided, in relevant part:

ORDER - 2

> Article 14. Time is of the essence and the Subcontractor agrees to keep itself thoroughly informed as to the overall progress of the project; to commence and to prosecute the work in a prompt and diligent manner so as to promote the general progress of the entire project; and Subcontractor shall not by delay or otherwise, interfere with or hinder the work or progress of the Contractor or any other subcontractor. . . .
>
> Subcontractor agrees to accept any and all orders, notices, directive, schedules or revisions thereof which may be issued from time to time by the Contractor to Subcontractor, and in the event of any conflict between the requirements of any of the foregoing, it is agreed that the time or times of performance shall be governed by the communication bearing the most recent date. . . .
>
> In the event of any failure of Subcontractor to complete its work within the required time, the Subcontractor agrees to reimburse the Contractor for any and all liquidated damages, if any, that may be assessed against the Contractor, which are directly or indirectly caused by the Subcontractor's failure to comply fully with the foregoing provisions; and further, whether or not liquidated damages are so assessed, Subcontractor hereby agrees to pay to the Contractor all damages the Contractor may sustain by reason of any such delay directly or indirectly caused by the Subcontractor . . . .

(*Id.*) In addition, under Article 42, the Subcontract provided: "[t]he effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed." (*Id.* at 12.)

Beginning on May 16, 2017, Skytek engaged TKE about providing submittals for the Project so Skytek could provide them to the VA to commence construction on the Project work. (Skytek Opposition, Ex. 2 (Dkt. # 31-2) at 4.) The submittals consisted of "cut sheets of major components being replaced, engineered drawings of the machine room, hoistway, detailed elevator section view, governor and machine, and car and hall fixtures." (Paladino Decl., Ex. B (Dkt. # 28-2).) From May 2017 through August 2017, the record demonstrates TKE and Skytek communicated frequently regarding the submittals and TKE's delay in providing them to Skytek. (Paladino Decl., Exs. B, D (Dkt. # 28-4), E (Dkt. # 28-5); Skytek Opposition, Exs. 4 (Dkt.

ORDER - 3

# 31-4), 6 (Dkt. # 31-6), 7 (Dkt. # 31-7), 8 (Dkt. # 31-8), 9 (Dkt. # 31-9), 11 (Dkt. # 31-11), 13 (Dkt. # 31-13), 14 (Dkt. # 31-14), 15 (Dkt. # 31-15).) TKE submits the delays were caused for a myriad of reasons, notably: (1) its need to coordinate with the VA and Skytek to obtain access to the Project facility; (2) because the percentage of down payment for the Project work had not been settled in the Subcontract; and (3) due to a shutdown with the elevator machine company that would be supplying TKE's materials. (*See* Paladino Decl. at ¶¶ 4, 6-7.)

On June 26, 2017, TKE signed the proposed Subcontract but included an attached "Amendment No.1." (Paladino Decl., Ex. A at 14-15.) That amendment provided:

> This Amendment No.1 shall be made a part of this Agreement, and in the event of conflict with other articles, terms, conditions or contract documents, this Amendment No.1 shall be final.
>
> . . .
>
> 14. Amend so a schedule shall be agreed to in writing by both parties before becoming effective. Amend so that Subcontractor shall automatically receive an extension of time commensurate with any delay not solely caused by Subcontractor. Subcontractor shall not be liable for consequential damages.

(*Id.* at 14.) Amendment No. 1 also designated that Article 42's previous reference to the Subcontract's effective date was stricken. (*Id.*)

On August 1, 2017, Skytek received a "Notice of Non-Compliance" from the VA. (Paladino Decl., Ex. C (Dkt. # 28-3) at 2-4.) The VA's Notice specified it had not received any submittals for the elevator work, and the current contract duration of 500 days was in jeopardy. (*Id.* at 2.) On August 15, 2017, Skytek signed and finalized the Subcontract. (Paladino Decl. at ¶ 3; *id.*, Ex. A at 1.) The "Start Date" and "Estimated Completion Date" were both left blank. (Paladino Decl., Ex. A at 2.)

On August 17, 2017, TKE provided its submittals to Skytek. (Paladino Decl. at ¶ 7; *id.*, Ex. E.) The submittals were to be reviewed by Skytek, the VA, the VA's consultant on the

ORDER - 4

Project, and the Project architect, which TKE alleges resulted in additional delays due to contradictory responses and confusion as to who had final say over the submittals. (Paladino Decl. at ¶ 8; Paladino Decl., Ex. F (Dkt. # 28-6).) Corrections and further revisions of the submittals took place throughout November 2017 based on the VA's request for changes to the elevator system being provided and for additional details on equipment and material being replaced. (Paladino Decl. at ¶¶ 9-10; Paladino Decl., Ex. H (Dkt. # 28-8); Paladino Decl., Ex. I (Dkt. # 28-9); Skytek Opposition, Ex. 17 (Dkt. # 31-17) at 1.)

On or about November 8, 2017, Federal issued a bond for the Subcontract ("Subcontract Bond"). (Hansen Decl. at ¶ 3; Hansen Decl., Ex. B (Dkt. # 29-2) at 1-2.) The Subcontract Bond designated TKE as the principal and Federal the surety. (*Id.*) On February 7, 2018, TKE sent a proposed installation schedule to Skytek indicating it would begin Project work in late March. (Paladino Decl. at ¶ 12; Paladino Decl., Ex. K (Dkt. # 28-11) at 1-2.) On March 23, 2018, TKE sent a revised proposed schedule due to issues with obtaining materials and noted its work was set to begin on May 14, 2018. (Paladino Decl. at ¶ 13; Paladino Decl., Ex. L (Dkt. # 28-12) at 1-2.) TKE alleges it did not receive a response from Skytek on either schedule proposal and neither schedule proposal was signed by TKE or Skytek. (*Id.*)

On May 14, 2018, TKE's subcontractors began Project work, and TKE's personnel began Project work on May 29, 2018. (Paladino Decl. at ¶ 15.) Work on the three Project elevators was phased and completed by TKE throughout 2018 and 2019: (1) Elevator P-4 was completed and accepted by the VA on November 1, 2018; (2) Elevator P-3 was completed and accepted by the VA on January 30, 2019; and (3) Elevator P-2 was completed and accepted by the VA on May 16, 2019. (Paladino Decl., Ex. N (Dkt. # 28-14) at 1-6.) TKE last supplied labor and materials for the Project on August 2, 2019. (Paladino Decl. at ¶ 15.) In late August 2019, Skytek asked TKE

ORDER - 5

for a price quote on additional work for the VA. (Paladino Decl., Ex. P (Dkt. # 28-16) at 1-5.) At that time, TKE discovered Skytek failed to pay its last sent invoice, leaving an owed balance of $75,814.51. (*Id.* at 2.) On April 24, 2020, Skytek declared TKE to be in default of its obligations under the Subcontract. (Skytek's Compl. (Dkt. # 14) at ¶ 6.)

TKE's complaint alleges it is owed $75,792.22 for labor and materials provided to Skytek for the Project, in addition to interest, costs, and attorney's fees provided for under the Subcontract.[1] (TKE Compl. at ¶¶ 8, 12.) TKE's claim for payment, pursuant to the Miller Act, 40 U.S.C. § 3133, *et seq*, is made against the Project Bond itself, and therefore, TKE seeks judgment against Guarantee for Skytek's failure to pay. (*Id.* at ¶¶ 10-13.) Skytek submits, by way of affirmative defense and counterclaim, that TKE failed to complete its obligations under the Subcontract on a timely basis, and due to TKE's delay, the Project's contract date had to be extended by 343 days. (Resp. at 5.) As a result of TKE's delay and alleged breach, Skytek claims damages in the amount of $714,013.00 against TKE. (Skytek's Answer (Dkt. # 11) at ¶ 14.) Skytek's third-party complaint seeks judgment against Federal's Subcontract Bond due to TKE's failure to timely perform. (Skytek's Compl. at ¶ 9.)

### III. DISCUSSION

#### A. Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.

---

[1] TKE's requested amount for the unpaid invoices now appears to be $75,814.51 based off TKE's Motion request and submitted invoice documents. (*See* Mot. at 6; Paladino Decl., Ex. P at 2.)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

**B.     Miller Act**

The Miller Act authorizes a subcontractor to bring suit against a general contractor's surety bond if the subcontractor is not paid within 90 days of completing its work. 40 U.S.C. § 3133(b)(1); *Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1205 (9th Cir.

2002) ("[A] subcontractor's right of recovery on a Miller Act payment bond is conditioned on the passage of time from completion of work or provision of materials."). "Under the Act, every person who has furnished labor or material used in a project may recover against a Miller Act surety." *Mai Steel Serv., Inc. v. Blake Const. Co.*, 981 F.2d 414, 417 (9th Cir. 1992) (citations and internal quotations omitted). "The liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act." *Walton Tech., Inc.*, 290 F.3d at 1206.

To prevail under the Miller Act, TKE must demonstrate that: (1) TKE provided materials and labor in furtherance of the work provided for under the Subcontract; (2) TKE has not been paid; (3) TKE had a good faith belief that its materials and labor were intended for the specified work; and; (4) that all other jurisdictional requisites are met. *See United States ex rel. Hawaiian Rock Prod. Corp. v. A.E. Lopez Enters., Ltd.*, 74 F.3d 972, 975 (9th Cir. 1996). "Jurisdictional requisites" refer to the "timely notice and filing" requirements under the Miller Act. *Id.*

Skytek does not dispute TKE fulfilled the elements of its Miller Act claim for the unpaid invoices. (*See* Resp.) Skytek's only submitted defense to TKE's Miller Act claim is that TKE breached the Subcontract because it did not timely perform the Project work. (*See id.* at 1, 5-6; Skytek's Answer at 4.) Skytek does not otherwise allege any of TKE's work or materials provided was defective or that TKE's Miller Act claim fails on its merits. Therefore, absent a demonstration TKE breached the Subcontract, TKE is entitled to prevail on its Miller Act claim.

C. **Breach of Contract**

Under Washington law, the formation of a contract requires a meeting of the minds between the parties to the contract. *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wash.2d 120, 125-26

ORDER - 8

(1994); *Blue Mt. Constr. Co. v. Grant Cty. Sch. Dist. No. 150-204*, 49 Wash.2d 685, 688 (1957) ("The acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract."). To prevail on a claim for breach of contract in Washington, a plaintiff must generally show: (1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages. *See e.g.*, *Storti v. Univ. of Wash.*, 181 Wash.2d 28, 35 (2014). Washington follows the objective manifestation theory of contracts, which "lays stress on the outward manifestation of assent made by each party to the other. The subjective intention of the parties is irrelevant." *City of Everett v. Sumstad's Estate*, 95 Wash.2d 853, 855 (1981) (citation omitted).

The objective manifestation theory of contracts coexists with Washington's "context rule," which allows extrinsic evidence to help determine the meaning of specific words and terms used in the contract. *Berg v. Hudesman*, 115 Wash.2d 657, 667-68 (1990). Extrinsic evidence includes "the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties, and the reasonableness of the respective interpretations urged by the parties." *Hearst Comm., Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 502 (2005). However, extrinsic evidence is not authorized to "'show an intention independent of the [contract]' or to 'vary, contradict[,] or modify the written word.'" *Id.* (quoting *Hollis v. Garwall, Inc.*, 137 Wash.2d 683, 695 (1999)). Furthermore, if a written contract is fully integrated, extrinsic evidence is not admissible to add to the terms of a fully written integrated contract. *Hulbert v. Port of Everett*, 159 Wash.App. 389, 400 (Wash. App. Div. 1 2011).

Skytek alleges TKE failed to complete its obligations under the Subcontract on a timely basis, and due to TKE's delay, the Project's contract date had to be extended by 343 days. (Resp.

ORDER - 9

at 5-6.) Skytek argues TKE's amendments to the Subcontract are not enforceable because it gave TKE "unfettered discretion" as to whether and when to perform under the Subcontract. (*Id.* at 6.) TKE counters there is no basis in the Subcontract for Skytek's counterclaim because the parties did not finalize the Subcontract until August 15, 2017, which included Amendment No.1's provision that any "schedule shall be agreed to in writing by both parties before becoming effective." (Mot. at 6-10.) Consequently, TKE argues that because no schedule was ever mutually agreed-upon between TKE and Skytek in writing, there is no contractual basis for Skytek's counterclaim based on the delay. (*Id.* at 9.)

Here, the Court finds there are no genuine issues of material fact, and that it is undisputed the Subcontract was properly formed with Amendment No.1 incorporated into its terms. Furthermore, there is no genuine issue of material fact that a schedule was not mutually agreed-upon between TKE and Skytek. Nevertheless, Skytek submits several defenses to the Subcontract's enforceability due to TKE's delays on the Project work. The Court addresses each of Skytek's defenses in turn:

        i.      *Illusory Promise*

First, Skytek argues TKE's inclusion of Amendment No.1's language rendered TKE's promise to perform illusory because it was entirely within TKE's control whether to be bound to a project schedule. (Resp. at 6-7.) An illusory promise is a specific type of a claim that the contract is unenforceable because of a lack of consideration; a promise is illusory if its performance is optional or discretionary. *Metro. Park Dist. of Tacoma v. Griffith,* 106 Wash.2d 425, 434 (1986). "An 'illusory promise' is a purported promise that actually promises nothing because it leaves to the speaker the choice of performance or nonperformance . . . there is no actual requirement upon the 'promisor' that anything be done because the 'promisor' has an

alternative which, if taken, will render the 'promisee' nothing." *Interchange Associates v. Interchange, Inc.*, 16 Wash.App 359, 360-61 (Wash. App. Div. 1 1976).

The plain language of Amendment No.1 is clear and unambiguous that TKE and Skytek intended that both parties would have to agree to a schedule before it became effective, which clearly did not leave it at TKE's sole discretion on whether and when to perform the Project work. (*See* Paladino Decl., Ex. A at 14.) Based on the record, it appears TKE provided schedules to Skytek on February 7, 2018, and March 23, 2018, but neither party signed nor agreed to a schedule. (*See* Paladino Decl. at ¶¶ 12-13; Paladino Decl., Ex. K at 1-2; Paladino Decl., Ex. L at 1-2.) Nevertheless, TKE began Project work in May 2018 and completed it in May 2019, with follow-up work through August 2019, with no objection from Skytek. It also does not appear from the record that Skytek approached TKE about finalizing a formal schedule while the Project work was ongoing. In any case, Skytek had the right "at any time and in its sole discretion" to "terminate th[e] Subcontract" for convenience under Article 18 of the Subcontract if it had any issue with TKE's performance or delay, which also did not occur. (Paladino Decl., Ex. A, at 7.) Consequently, Skytek fails to demonstrate Amendment No.1's provision regarding scheduling was an illusory promise from TKE.

        ii.     *Good Faith*

Next, Skytek argues TKE's failure to perform its work under the Subcontract with diligence was a breach of its obligation to perform in good faith. (Resp. at 7-8.) Skytek argues TKE interfered with Skytek's obligations to the VA by delaying its completion of the Project work by almost a year, and therefore, Skytek's duty to pay TKE the remaining invoice balance should be discharged. (*Id.*)

There is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank,* 116 Wash.2d 563, 569 (1991). "[T]he duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties." *Id.*; *see also Johnson v. Yousoofian,* 84 Wash.App., 755, 762 (Wash. App. Div. 1 1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith.") (citations omitted).

Skytek fails to demonstrate TKE did not perform in good faith based on its contractual duties under the Subcontract. Skytek appears to premise its good faith argument on an assumption TKE had contractual duties arising based on the bid form it submitted for the Project work, which Skytek alleges incorporated the VA's 500-day deadline. (*See* Resp. at 4, 7.) However, the parties' duties under the Subcontract did not arise until the Subcontract was executed in August 2017. (*See* Paladino Decl. at ¶ 3; *id.*, Ex. A at 1.) In addition, Article 4 of the Subcontract expressly provides that the Subcontract "constitutes the entire agreement between the parties and contains all of the covenants, stipulations, and provisions agreed upon by the parties" and "supersedes all proposals, correspondence, and oral agreements between [TKE] and [Skytek], if any, made prior to and including the date hereof, and not specifically identified and incorporated in writing in this Subcontract." (*See* Paladino Decl., Ex. A at 3.)

Based on the record, there is no evidence TKE and Skytek sought to include the VA's 500-day deadline into the Subcontract. Instead, as previously noted, it appears TKE and Skytek intended Amendment No.1 to require an agreed schedule by both parties in order to create any obligation as to when the Project work was to be performed. (*See* Paladino Decl., Ex. A at 14.) Absent an affirmative obligation on when it was required to perform, TKE could not have

breached a duty of good faith without an agreed upon schedule to which it was bound. Furthermore, because the VA accepted TKE's work, Skytek's fails to demonstrate a breach or termination of its contract with the VA, or that the VA sought damages against Skytek due to TKE's delays on the Project work.

                *iii.*     *Unconscionability*

Finally, Skytek argues TKE's provision in Amendment No.1 excluding consequential damages should be deemed unenforceable on the basis of unconscionability. (Resp. at 8-10.) Skytek argues it had no choice but to accept TKE's contractual modifications in Amendment No.1 because TKE was the "only game in town," rendering the provision procedurally unconscionable. (*Id.* at 9.) Skytek additionally argues the provision was substantively unconscionable because it left Skytek with no remedy for TKE's delay in performing the Subcontract. (*Id.* at 10.)

Under Washington law, a contract, or a provision in its terms, is not valid if it is either procedurally or substantively unconscionable. *Nelson v. McGoldrick,* 127 Wash.2d 124, 131 (1995); *see Mattingly v. Palmer Ridge Homes LLC*, 157 Wash.App. 376, 392 (Wash. App. Div. II 2010). Procedural unconscionability relates "to impropriety during the process of forming a contract." *Nelson*, 127 Wash.2d at 131. It involves "blatant unfairness in the bargaining process and a lack of meaningful choice." *Torgerson v. One Lincoln Tower, LLC*, 166 Wash.2d 510, 518 (2009). Procedural unconscionability is "determined in light of the totality of the circumstances, including: (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were hidden in a maze of fine print." *Id.* at 518-19 (citations and internal quotations omitted). Substantive unconscionability involves cases "where a clause or term in the contract is alleged to be

one-sided or overly harsh." *Luna v. Household Fin. Corp. III,* 236 F.Supp.2d 1166, 1177 (W.D. Wash. 2002) (citing *Nelson,* 127 Wash.2d at 131). "'Shocking to the conscience,' 'monstrously harsh' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.* (quoting *Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention,* 16 Wash.App.439, 444 (Wash. App. Div. III 1976)).

Here, the Court does not find Amendment No.1's exclusion of consequential damages provision procedurally or substantively unconscionable. Based on the record before the Court, Amendment No.1 was clearly bargained for between TKE and Skytek in forming the Subcontract and Skytek had a reasonable opportunity to understand its terms. (*See* Paladino Decl., Ex. A at 14-15.) In fact, Skytek included its own interlineated additions and alterations to Amendment No.1 in finalizing the Subcontract. (*See id.*) Furthermore, Skytek had a meaningful choice as to whether to enter into the Subcontract with TKE, choosing to use TKE instead of a different elevator manufacturer or installer company for the Project work. The exclusion of consequential damages provision itself was conspicuous in Amendment No.1 and there is no evidence in the record Skytek was not aware of the provision, did not understand it, or took issue with it at the time TKE and Skytek finalized Amendment No.1. Consequently, Skytek has failed to establish any evidence of unfairness, lack of meaningful choice, or that the provision was overly one-sided to demonstrate Amendment No.1's consequential damages provision was procedurally or substantively unconscionable.

In conclusion, the Court finds Skytek's breach of contract claims fail to excuse its obligation to TKE for the remaining unpaid invoices on TKE's Miller Act claim. Therefore, the Court grants summary judgment in favor of TKE on its Miller Act claim. As a result of the

Court's findings, Skytek's counterclaim against TKE, and Miller Act claim as to Federal, are both dismissed.

### D. Damages

TKE argues it is entitled to judgment on the unpaid invoices, reasonable attorney's fees and prejudgment interest because Skytek's only defense to its non-payment was premised on TKE's delayed performance. (Mot. at 10-11.) TKE notes the Subcontract provides the prevailing party in any dispute over withheld payments under the Subcontract "shall be reimbursed for all costs and reasonable attorney's fees" and that prejudgment interest at the rate of 12 percent is warranted because the invoice is a liquidated amount. (*Id.* at 11; *see* Paladino Decl., Ex. A at 14.)

The Court agrees. TKE's measure of recovery under the Miller Act is the amount due under the bonded subcontract. *See Taylor Constr. Inc. v. ABT Serv. Corp.*, 163 F.3d 1119, 1122-23 (9th Cir. 1998). TKE is awarded damages on the unpaid invoices in the amount of $75,814.51. In its briefing, TKE notes it will file a separate motion for an award of fees, costs, and prejudgment interest and entry of judgment against Skytek and Guarantee should its motion for summary judgment be granted. (Mot. at 2, 12.) Accordingly, the Court will reserve ruling on an award of additional amounts and entering judgment at this time.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby orders:

(1) TKE's Motion (dkt. # 27) is GRANTED. TKE is awarded damages in the amount of $75,814.51 on the unpaid invoices. TKE shall file a motion for an award of fees, costs, and prejudgment interest and a proposed judgment against Skytek and Guarantee on or before **June 16, 2021**;

(2) Skytek's counterclaim for breach of contract (dkt. # 11) against TKE is DENIED;

ORDER - 15

(3) Skytek's third-party claim (dkt. # 14) against Federal is DENIED;

(4) The Clerk is directed to send a copy of this Order to the parties.

Dated this 17th day of May, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 16